The employee injured his back at work while bending over, reaching across a table using a ratchet wrench. The employee felt a "catch" and had difficulty straightening up. Shortly, the employee has severe back and left leg pain. The employee reported his injury to his supervisor, but no injury report was completed. The employee and his wife recall a discussion, (or being told about the discussion) with the supervisor, that worker's compensation would not cover the injury unless the employee went to a company doctor.
Subpoenaed co-employees, Melvin Storey and Steve Sigmon were aware of the employee being injured on May 25, 1999, as was the employee's pastor.
Because of the pain, the employee left work and went to the office of Dr. P.E. Brown where the employee was seen without a prior appointment because of his pain. When the employee left work, two other employees assisted him to the parking lot. The employee's wife brought her vehicle to Dr. Brown's office for the employee to drive, because the employee had difficulty operating the clutch of his vehicle.
The employee has a history of back problems including a 1994 disk surgery by Dr. P.E. Drown. After 1994, the employee had a flare-up in 1996, but had not been treated for his back since August 16, 1996. After Dr. Brown's 1994 surgery, the employee did very well and returned to his heavy work job at Shook Builders.
When Dr. Brown saw the employee on the day of injury, May 25, 1999, the employee had positive straight leg raising test at 45 degrees. Dr. Brown, a board certified orthopaedic surgeon, testified as of May 25, 1999, the employee's condition was substantially changed/worsened from 1994 with left leg pain instead of right leg pain, and severe chronic pain. Dr. Brown recommended conservative treatment.
The employee was seen for a second opinion by Dr. Charles Branch at Baptist Hospital who also did not recommend surgery. The employee has had continuing treatment by Dr. Hans Hansen, a pain specialist, and Dr. Pamela Howard, a neurologist. The employee will need continuing treatment for the foreseeable future, and is not at maximum medical improvement.
Dr. Brown and Dr. Howard testified the employee's chronic pain syndrome or other back conditions were likely worsened by the injury at work in view of the onset of different substantial symptoms at the time of injury then the employee had ever had before.
The employee has been unable to work since May 25, 1999.
While in this case, as most claims, there is some evidence on both sides, the greater weight of evidence supports the Deputy Commissioner's Opinion and Award, including:
a) Testimony of the employee that:
 — On Friday, May 25, 1999, he felt the onset of back pain, first in the morning, and then later in the afternoon had pain so severe he had difficulty straightening up after reaching across a table using a wrench. (George Keller T pp. 4-5, A pp. 23; T p. 36, A p. 1).
 — He told his supervisor, Ralph Weaver, who wanted him to go to a company doctor the employee did not want to see (Keller T p. 5, A p. 3).
 — He had occasional back trouble all his life, and had a 1994 back surgery by Dr. Brown, but had done fairly well thereafter (Keller T pp. 5-8, A pp. 36).
 — By the end of the May 25, 1999 workday, his pain was much worse than before that day and he required assistance from co-employee's getting to his car (Keller T pp. 8-12, A pp. 6-10), and had to switch to an automatic transmission vehicle because of pain.
b) Testimony of the employee's spouse that:
 — She was present when the injury was discussed with the supervisor, Ralph Weaver, after the employee had emergency treatment with Dr. Brown (Beth Keller T pp. 41-44, A pp. 11-14).
 c) Testimony of Wayne White, the employee's pastor, that:
 — The employee appeared to be in severe pain when the witness saw him after 5:00 p.m. the day of injury (White T pp. 46-47, A pp. 15-16).
d) Testimony of Melvin Storey, co-employee, that:
 — On May 25, 1999, the employee complained of back pain after lifting, and the witness saw him holding his hip and limping (Storey T pp. 51-52, A pp. 17-18).
 e) Testimony of Steve Sigmon, a subpoenaed co-employee, that:
 — On May 25, 1999, the employee told him he had hurt his back, and he appeared to be in pain (Sigmon T pp. 55-56, A pp. 19-20).
f) Testimony of Ralph Weaver, supervisor, that:
 — Until May 25, 1999, the employee was able to do his job (Weaver T pp. 68-69, A pp. 21-22).
 — He does not remember the details of the conversation when the employee's wife was present (Weaver T p. 69, A p. 22).
 g) Testimony of Dr. P. E. Brown, board certified orthopaedic surgeon, that:
 — Before May 25, 1999, the employee had surgery for a herniated disk, after which, except for some flare-ups, he had done relatively well. Before May 25, 1999, the employee had not been seen since August 16, 1996 (Brown D pp. 4-6, A pp. 23-25).
 — On May 25, 1999, based on then symptoms, Dr. Brown thought the employee might have a recurrent herniated disk. The employee's symptoms on May 25, 1999 were much worse than when last seen August 16, 1996 (Brown D pp. 6-9, A pp. 25-28).
 — His opinion is the employee's multi-level degenerative disk disease, spondylosis, fibrosis and chronic pain syndrome were likely caused or aggravated by the May 25, 1999 incident at work (Brown D pp. 13-16, A pp. 29-32).
 — The employee is unlikely to ever be able to return to work after June 25, 1999 (Brown D pp. 16-17, A pp. 32-33).
h) Testimony of Dr. Pamela Russell-Howard that:
 — The employee's chronic back and leg pain could have been aggravated by the May 25, 1999 incident at work (Howard D pp. 10-14, A pp. 34-38).
 — It would be difficult for the employee to return to work (Howard D p. 14, A p. 38).
 — From the employee's history there appears to be a definite change/worsening as of May 25, 1999 when he says he was injured (Howard D p. 17, A p. 17).
In my opinion, under the majority's view of the world, an injured worker can never have a legitimate specific traumatic incident (no matter what corroborative evidence) if the same body part was injured at some distant time in the past, no matter that the body part had long since healed. That is simply not real world.
The Deputy Commissioner's decision was correct. I vote to affirm.
This 16th day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER